UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 5:18-cv-20-JMH |
| | ) | |
| STEPHANIE HARRIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*

This matter having come before the Court upon the Plaintiff's Amended Motion for Judgment and Order of Sale [DE 33] against the interests of the Defendants, Stephanie Harris (a/k/a Stephanie Andre, a/k/a Stephanie Harris Andre), Paul Davis Systems of Lexington, Inc. (d/b/a Paul Davis Restoration of Lexington), Central Kentucky Management Services, Inc., Chase Manhattan Mortgage Corporation, Unknown Spouse, if any, of Stephanie Harris, and LVNV Funding, LLC, in and to the real property which is subject to this action. Ultimately, the mortgage granted to the United States against the subject real estate has priority over other liens and Harris's account is severely delinquent. Thus, Plaintiff's Motion [DE 33] is **GRANTED**; Defendant's Motion to Dismiss Judgment and Sale of House [DE 31] is **DENIED**; and Plaintiff's first Motion for Judgment and Order of Sale [DE 28] is **DENIED AS MOOT**.

1

## I. Factual and Procedural History

On March 12, 2004, Defendant Stephanie Harris executed and delivered a promissory note to the United States of America, on behalf of the Department of Agriculture ("USDA"), Rural Housing Service ("RHS") or Rural Development ("RD"). [DE 1-2]. Contemporaneously, Harris executed and delivered a real estate mortgage, recorded on March 24, 2004, against the real property that is the subject of this action, which is located in Jessamine County, Kentucky. [DE 1-3]. The note contained a default provision, stating in part that:

> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the government may require me to immediately pay the full amount of unpaid principal, all the interest that I owe, and any late charges. . . . Even if, at a time when I am in default, the Government does not require me to pay immediately as describe[d] in the preceding sentence, the Government will still have the right to do so if I am in default at a later date.

[DE 1-2 at 2, Page ID # 13]. Additionally, paragraph 22 of the mortgage document states that RHS may accelerate the debt and foreclose on the property to satisfy the remaining debt obligation. [DE 1-3 at 5, Page ID # 19].

The Complaint was filed in this action on January 1, 2018, alleging that Harris had failed to make required loan payments and was in default. [DE 1]. On May 24, 2018, Defendant Paul Davis Systems answered. [DE 15]. Then, on May 30, 2018, Defendant

Stephanie Harris, proceeding pro se, answered and made general counterclaims against the United States, alleging breach of contract, fraud, harassment, and "stress relief." [DE 18]. Finally, on June 14, 2018, Defendant Central Kentucky Management Services answered and asserted a counterclaim and cross claim, requesting that the Court "determine the priority of the liens and interests in the subject property, order a judicial sale of the property as a whole, and distribute the sale proceeds to the parties herein in order of the priority of their respective interests." [DE 20].

A court-appointed warning order attorney was appointed in an attempt to notify Defendant Unknown Spouse, if any, of Stephanie Harris about the pending foreclosure action. [DE 14]. The warning order attorney's reports indicate that she was unable to locate or notify the Unknown Spouse, if any, of Stephanie Harris of this litigation and the Court accepted the report. [DE 23; DE 24; DE 26].

Subsequently, the United States moved for the entry of default against Defendants Chase Manhattan Mortgage Corporation, Unknown Spouse, if any, of Stephanie Harris, and LVNV Funding, LLC. [DE 25]. The Clerk entered default on May 8, 2018, as the three previously listed defendants were served and failed to answer or appear. [DE 27].

Then, the United States moved for judgment and order of sale on May 24, 2018. [DE 28]. On August 29, 2018, Defendant Stephanie Harris moved for an extension of time to retain counsel [DE 29], which was granted. [DE 30]. On October 5, 2018, Harris filed a pro se motion styled as a "Motion to Dismiss Judgment and Sale of House." [DE 31]. On November 5, 2018, the United States filed an amended motion for judgment and order of sale. [DE 33]. Harris has not responded to the amended motion. No other Defendants have responded to the initial motion for judgment and order of sale or the amended motion for judgment and order of sale. As a result, this matter is ripe for review.

## II. Analysis

Kentucky is a "race-notice" jurisdiction and in order for a mortgage to have first priority, one must not only be the first to file the mortgage, deed or deed of trust, but the filer must also lack actual or constructive knowledge of any other mortgages, deeds or deeds of trust related to the property." *Wells Fargo Bank, Minnesota, N.A. v. Commonwealth, Fin. & Admin., Dep't of Revenue*, 345 S.W.3d 800, 804 (Ky. 2011); *see also Mortg. Elec. Registration Sys., Inc. v. Roberts*, 366 S.W.3d 405, 407-08 (Ky. 2012).

Under Kentucky common law, the first creditor to file a lien enjoys the first right to the property. *Wells Fargo*, 345 S.W.3d at 804. This rule is also known as "first in time, first in

right." *Id.* (citing *Truck Corp. of Ky. v. Hurry Up Broadway Co.*, 1 S.W.2d 990 (Ky. 1928)).

In this action, the United States seeks to foreclose on and sell the subject real property to satisfy, or at least partially satisfy, the amount of its loan to Harris. An affidavit provided by the United States indicates that as of January 9, 2018, Harris's loan account had been delinquent since September 12, 2014, and that the account was delinquent in the amount of $51,071.58. [DE 1-5].

Three defendants have answered and appeared in this action. Defendants' arguments and the priority of Defendants' interests in the subject property is discussed below.

**A.  Interest of Defendant Stephanie Harris**

As an initial matter, the Court primarily construes Harris's October 5, 2018, "Motion to Dismiss Judgment and Sale of House" [DE 31] as a response in opposition to Plaintiff's Motion for Judgment and Order of Sale [DE 28]. The United States is correct that since a judgment has not been entered in this case that there is no judgment to set aside, as requested by Harris's motion. [See DE 33 at 3, Page ID # 197]. Still, the Court construes filings "by their substantive content and not be their labels." *See Coleman v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-0049, 2011 WL 3273531, at *3 (S.D. Ohio Aug. 1, 2011). Additionally, the law is clear that sometimes courts may "ignore the legal label that a pro

5

se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category" to avoid unnecessary dismissal. *See, e.g.*, *Castro v. United States*, 540 U.S. 375, 381 (2003) (discussing a pro se litigant's motion attacking his sentence and citing cases); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As such, the Court primarily construes Harris's Motion [DE 31] as a response in opposition to the motion for judgment and order of sale.

Here, Harris maintains that she is not in default or, that if she is in default, the default was caused by the actions of the USDA. [DE 18 at 1, Page ID # 120]. Harris appears to assert that the USDA failed to provide relief to assist her in meeting the loan obligations, causing her loan to be in default. [*See id.*]. Harris has attached a subsidy repayment agreement, partial copies of reamortization agreements, and partial copies of monthly billing statements in support of her defenses and counterclaims. [DE 18-1].

Additionally, Harris appears to take issue with the dismissal of a related foreclosure action in 2016, appearing to allege that the case was dismissed without a modification or plan regarding her loan agreement. [*See* DE 31 at 1, Page ID 190]. These arguments are addressed below.

1. **Dismissal of Previous Foreclosure Suit**

First, Harris seems to suggest that the previous dismissal of a foreclosure lawsuit regarding the subject property was wrongful or has some effect on this action. Harris is correct that a previous foreclosure action filed against the subject property was dismissed without prejudice. *See United States v. Stephanie Harris*, No. 5:16-cv-221-KKC, (E.D. Ky. Oct. 14, 2016) (dismissing case, see docket entry 12 at 1).

Still, it is unclear why Harris raises dismissal of the previous action as an issue. In fact, is appears that dismissal of the previous suit benefitted Harris. The United States asserts that the previous action was dismissed "in order for the USDA to process a reamortization for the Defendant in an attempt to lower her monthly payment." [DE 33 at 3, Page ID # 197]. Seeing as Harris's loan account has been delinquent since 2014, presumably the USDA could have continued with the previous action and foreclosed on the subject real property in 2016. Due to the dismissal, however, the USDA has considered a reamortization of Harris's loan and Harris has been allowed to remain in her home in the meantime.

Additionally, there is no apparent defect with the previous dismissal as a matter of law. Under the Federal Rules of Civil Procedure, where a defendant has served an answer, a plaintiff may

7

dismiss a lawsuit with the Court's permission. Fed. R. Civ. P. 41.

Also, the Plaintiff was free to refile the lawsuit because it was dismissed by the Court without prejudice. Here, there is no indication that the Plaintiff waived the right to refile the lawsuit. Additionally, Harris makes no argument regarding a statute of limitations defense. In fact, the promissory note, signed by Harris, explicitly gives the Plaintiff the right to require full payment of the debt if Harris is in default, even if the Plaintiff refused to exercise that power in the past. [*See* DE 1-2 at 2, Page ID # 13].

Ultimately, the previous dismissal was to Harris's benefit, as it allowed the USDA to consider lowering Harris's payments. RHS was under no obligation to provide such relief to Harris and RHS is legally entitled to refile the lawsuit, seeing that Harris's loan continues to be in default.

**2. Relief Under the Housing Act of 1949**

Second, Harris appears to argue indirectly that RHS is legally obligated to provide her relief by reducing her loan payments. The Housing Act of 1949, 42 U.S.C. § 1441 et seq. ("the Housing Act") was enacted for the purpose of "elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as possible of the goal of a decent home and a suitable living environment for every

American family." 42 U.S.C. § 1441. Section 502(a) of the Housing Act authorized the Secretary of Agriculture to make loans to borrowers to finance affordable housing in rural areas. *See* 42 U.S.C. § 1472(a).

In 2009, Congress passed the Helping Families Save Their Homes Act, providing additional protections against foreclosures. *See* 42 U.S.C. §1472(h)(13)-(17). The law authorizes statutory protections for mortgagors with direct loans from RHS including moratorium relief, refinancing, assignment of loans, and loss-mitigation. See 42 U.S.C. §§ 1475(a), 1471(a), 1472(h).

The Sixth Circuit discussed protections for mortgagors with loans from RHS and concluded that, because the loss mitigation and relief provisions in the Housing Act are discretionary, courts lack subject matter jurisdiction under the Administrative Procedure Act ("APA") over RHS's decisions pertaining to relief to borrowers. *See Sheldon v. Vilsack*, 538 F. App'x 644, 650-53 (6th Cir. 2013) (discussing RHS's refusal to require lenders of loans guaranteed by RHS to engage in loss mitigation efforts with mortgagors).

As a result, this Court does not have the authority to compel RHS to provide Harris with additional relief or engage in further loss mitigation efforts. Under the APA, judicial review is unavailable "to the extent that (1) statutes preclude judicial review; or (2) *agency action is committed to agency discretion by*

9

*law."* 5 U.S.C. § 701(a)(1)-(2) (emphasis added); see *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Under the Housing Act, Congress did not mandate or require that RHS provide relief to borrowers who had defaulted or were at risk of default. As such, whether RHS continues to engage in loss mitigation efforts or chooses to provide further relief to Harris is squarely within the discretion of the agency.

**3. Breach of Contract**

Third, as both a defense and counterclaim, Harris asserts that RHS was contractually obligated to provide her relief by lowering her loan payments or providing a subsidy pursuant to Section 521 of the Housing Act of 1949. RHS acknowledges that it considered a reamortization for Harris in 2016 but that it concluded that Harris "was receiving the maximum assistance available to her based upon her financial status and her payment could not be reduced any further." [DE 33 at 2, Page ID # 197]. Even so, Harris seems to assert that she was contractually entitled to additional relief and a lower payment.

But here, the RHS is under no contractual obligation to provide Harris with a lower payment or with further relief. The Court can find no contractual provision in the record that entitles Harris to a lower loan payment or further relief from the USDA. Additionally, Harris has not pointed to any such contractual provision or legal entitlement. As a result, RHS is under no

contractual obligation to provide additional relief or engage in loss mitigation efforts with Harris.

**4. Fraud**

Fourth, as a counterclaim, Harris alleges that the RHS committed fraud when it sent her a reamortization agreement with an effective date of August 12, 2014. [See DE 18 at 3, Page ID # 122; DE 18-1 at 2, Page ID # 126]. Harris alleges that she received this letter in 2016 that was backdated, amounting to fraud. [DE 18 at 3, Page ID # 122].

Initially, it is unclear when the agreement was received by Harris or why it was sent. Someone, presumably Harris, provided a handwritten note at the top of the reamortization agreement exhibit stating, "backdated received in 2016." [DE 18-1 at 2, Page ID # 126]. But Harris has only provided the top portion of the reamortization agreement and has provided no envelope or other documentation that definitively indicates when the agreement was mailed. For instance, it is possible that the agreement is signed and dated at the bottom of the document or that there are multiple pages of the agreement.

Additionally, even if Harris did receive the agreement in 2016, it is unclear how that constitutes fraud. The reamortization agreement has an effective date of August 12, 2014, but that does not demonstrate that the agreement is fraudulent. It is possible that the agreement was sent in 2016 and but became effective at an

11

earlier time. Without more explanation and proof, it is unclear how the effective date on the reamortization agreement constitutes fraud.

Finally, it is equally unclear why Harris challenges the reamortization agreement or how it harmed her. Reamortization agreements constitute modifications of loans that generally assist a borrower, like Harris, who is having difficulty making the required mortgage payments. The agreement that RHS sent to Harris would have likely lowered her mortgage payments and ultimately been to her benefit. Regardless, because Harris has failed to explain why the effective date on the reamortization agreement constitutes fraud, her counterclaim for fraud must be denied.

**5. Harassment and Stress**

Fifth, Harris claims that RHS has sent monthly mailings regarding payments and foreclosure, constituting harassment. [DE 18 at 3, Page ID # 122]. Additionally, Harris claims that she has been under a tremendous amount of stress due to "unnecessary conflict with the U.S.D.A." [*Id.*].

To prove her harassment claims, Harris has attached copies monthly billing statements and notices pertaining to default and foreclosure review. [DE 18-1 at 3-8, Page ID # 127-32]. There is no doubt that financial hardship and the real estate foreclosure process causes stress for defaulting homeowners. Still, the documents that Harris includes in support of her claim of

12

harassment appear to be routine business documents where RHS attempted to collect a debt that was owed. But Harris does not explicate how RHS's sending documents pertaining to her loans constitutes harassment. For instance, Harris has not alleged any violation of the Fair Debt Collections Practices Act ("FDCPA") and does not allege that a bankruptcy stay was in place.

Harris alleges that she received five letters or notices on one day, but she has not provided the notices in their entirety, making it difficult for the Court to confirm her allegations. [*See* DE 18-1 at 6-7, Page ID # 130-31]. In fact, the notices appear to be identical and it is unclear whether the notices in the record constitute multiple notices or are simply duplicate copies of the same single notice. [*See* id.]

The billing statements contained in the record simply state the current amount that is owed by Harris and appear to have been sent on a monthly basis. Additionally, the final notice before default review appears to provide notice to Harris of her delinquency before default was declared. The purpose of these documents was not only to promote debt collection, but also to provide Harris with valuable information pertaining to her loan obligations and put her on notice that her loan account was delinquent and would potentially be placed in default. As such, Harris has failed to demonstrate that RHS's communications constitute harassment or caused her undue stress.

In sum, Harris has failed to demonstrate that she is legally or contractually entitled to additional relief from RHS pertaining to the mortgage on her home. Furthermore, Harris's counterclaims fail becuase she has not demonstrated that she may recover for breach of contract, fraud, or harassment. Ultimately, Harris voluntarily entered into a loan obligation with RHS and used her home as security. Seeing as her loan account has been delinquent since 2014, RHS is entitled to exercise its contractual rights, declare the loan in default, and foreclose to satisfy the debt.

**B. Interest of Central Kentucky Management Services, Inc.**

Defendant Central Kentucky Management Services, Inc., an assignee of the University of Kentucky Medical Center, asserts an interest in the subject property by virtue of a judgment lien. The Central Kentucky Management Services judgment lien was recorded in the Jessamine County Clerk's Office on May 30, 2008. [DE 1-10 at 2, Page ID # 38]. As such, since the Central Kentucky Management lien was recorded after the RHS Mortgage, the priority of the RHS mortgage is superior to the judgment lien of Central Kentucky Management Services.

**C. Interest of Paul Davis Systems of Lexington, Inc.**

Defendant Paul Davis Systems of Lexington, Inc., asserts that it has an interest in the subject property pursuant to a mechanic's lien and notice of judgment lien recorded in the Jessamine County Clerk's Office. [DE 15 at 2-3, Page ID # 113-14; see also DE 1-

14

8; DE 1-9]. While Paul Davis systems has answered, it has failed to respond in opposition to Plaintiff's Motion for Judgment and Order of Sale.

KRS § 376.010 provides that a properly filed and executed mortgage has superior priority over a subsequent mechanic's lien. See KRS 376.010; see also *Johnson Lumber Co. v. Stovall*, 394 S.W.2d 930, 931 (Ky. 1965).

Here, the real estate mortgage was recorded on March 24, 2004. [DE 1-3 at 7, Page ID # 21]. Notice of the Paul Davis Systems mechanic's lien was filed on or around February 22, 2012 and the judgment lien was recorded on July 31, 2013. [DE 1-9; DE 1-8]. As such, the RHS mortgage is first in time because it was recorded well before the Paul Davis mechanic's lien and judgment lien. As a result, the RHS mortgage has superior priority to the mechanic's lien and judgment lien of Paul Davis Systems.

**D. Interests of Defendants LVNV Funding and Chase Manhattan Mortgage Corporation**

Defendants LVNV Funding and Chase Manhattan Corporation have failed to appear in this action and have not asserted an interest in the subject property. LVNV and Chase appear to have been properly served [DE 10; DE 17]. The Clerk of the Court entered default against LVNV and Chase on August 8, 2018. [DE 27].

LVNV recorded notice of a judgment lien in the Jessamine County Clerk's Office on September 18, 2009. [DE 1-11 at 2, Page

15

ID # 40]. LVNV's judgment lien was recorded after the RHS mortgage. Thus, the priority of the RHS mortgage is superior to the judgment lien of LVNV.

Chase recorded a mortgage on the subject property in the Jessamine County Clerk's Office on December 27, 1999. [DE 1-6 at 4, Page ID # 27]. The mortgagor listed on the instrument is Larry Dean Cross. [*Id*. at 1, Page Id # 24]. Chase's mortgage was recorded before RHS's mortgage. Even so, Plaintiff's complaint asserts that Chase's "interest in or claim on the Property is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS." [DE 1 at 5, Page ID # 5]. Chase has had ample time and opportunity to assert its interest in the subject property or oppose the Plaintiff's motions for judgment and order of sale. As a result, Plaintiff is entitled to a foreclosure sale of the subject property.

### III. Conclusion

Harris's loan account has been delinquent since 2014. RHS appears to have previously granted Harris a reamortization agreement and moratoriums deferring her loan payments. [*Id*.]. It appears that RHS has been patient and lenient with Harris pertaining to her loan obligations. But the fact that RHS provided Harris previous moratoriums and reamortization agreements does not mean that RHS is currently obligated to offer Harris any additional form of relief.

At bottom, Harris appears to have freely executed a promissory note with RHS, providing the subject real property as collateral. As a result, Harris was obligated to repay the loan principal and interest in a timely fashion. Since Harris's loan account is delinquent, RHS may pursue contractual and legal recourse to recover the funds loaned Harris. RHS has previously attempted to provide Harris relief in the form of moratoriums and other relief but appears to be under no continuing contractual or legal obligation provide further loss mitigation.

Furthermore, Harris is not entitled to relief on her counterclaims for breach of contract, fraud, or harassment. Additionally, other interests asserted against the real property are inferior in priority to the RHS mortgage. As a result, RHS is entitled to judgment and a foreclosure sale of the subject property. Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's Amended Motion for Judgment and Order of Sale [DE 33] is **GRANTED**;

(2) To the extent that Defendant Harris's Motion to Dismiss Judgment and Sale of House [DE 31] seeks to dismiss the judgment or prevent foreclosure sale of the subject property, it is **DENIED**;

(3) Judgment and Order of Sale will be entered contemporaneously with this Memorandum Opinion and Order; and

(4) Having granted Plaintiff's Amended Motion for Judgment and Order of Sale [DE 33], the first Motion for Judgment and Order of Sale [DE 28] is **DENIED AS MOOT**.

This the 29th day of November, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge